**COMMONWEALTH of Kentucky, Appellant,**

v.

**Billy Ray SMITH, Appellee.**

**98–SC–0732–DG.**

Supreme Court of Kentucky.

Nov. 18, 1999.

A.B. Chandler III, Attorney General of Kentucky, Perry T. Ryan, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellant.

Susan Jackson Balliet, Assistant Public Advocate, Frankfort, for Appellee.

LAMBERT, Chief Justice.

An essential element of first degree robbery is that the accused must be in the course of committing a theft. At trial, evidence was presented that Billy Ray Smith, Appellee herein, held a gun on the victim and threatened him while Smith's cohort searched the victim's pockets for cash. Was this evidence against Smith sufficient to show that Smith was in the course of committing a theft and thus sufficient to sustain a conviction of first degree robbery?

The facts are as follows. The victim, Cleon Sumner, was a 50–year old mentally disabled man who was known in Perry County for carrying large amounts of cash—up to at least $14,000. He lived in a two-room house on George's Branch near Vicco and was known to use his residence as a sort of pawnshop.

At trial, Sumner testified that on the date of the crime, he was at his residence and that Glen Messer was visiting him. Smith and Wes Spicer entered with guns drawn. Smith initially held his weapon on Messer as Spicer held his gun on Sumner. Messer managed to flee from the scene. Smith then turned his gun on Sumner and ordered, "Lay down or I'll shoot your brains out." Sumner lay down. Smith then told Sumner he was a "dead duck." While Smith held Sumner at gunpoint, Spicer reached into Sumner's pockets and asked him where the money was. A struggle ensued, during which Sumner obtained the gun and shot Smith twice. Spicer attempted to regain the gun from Sumner, but Sumner shot him, too.

Smith testified to a different version of events. According to Smith, he and Spicer went to Sumner's house to pawn a gun for poker money. Smith testified that he and Messer exchanged heated words regarding Smith's girlfriend, and the two men got into a fight. Smith drew his gun during this altercation. Messer fled, and Smith followed. Smith turned to go back to the residence, and he was shot. Smith testified that he did not see who shot him.

Spicer died of his injuries at the scene of the crime, but Smith later recovered and was brought to trial. He was found guilty of first degree robbery and was sentenced to eighteen years imprisonment. On appeal, his conviction was reversed. The Court of Appeals stated its belief that Spicer was the only person "in the course of committing a theft" as required for a conviction of first degree robbery by KRS 515.020. The court thus ruled that Smith was entitled to a directed verdict of acquittal because he merely held a gun on the victim but did not participate in the attempted theft of the money. In so ruling, the court stated that the evidence was nonexistent as to an essential element of the offense, i.e., that Smith be in the course of committing a theft.

The Commonwealth contends that the evidence was sufficient to establish the necessary elements of robbery in the first degree. Smith argues, however, that absent a charge or instruction on complicity to commit first degree robbery, he was entitled to a directed verdict of acquittal. He contends that the Court of Appeals correctly refrained from ascribing to him any intention or acts committed by others present at the scene of the crime and properly relied only upon the evidence of his individual acts. An opposite conclusion, he argues, would render the complicity statute, KRS 502.020, absurd; it would allow a person to be convicted of robbery if, regardless of intent, he uses or threatens the use of force while someone else is in the course of committing a theft.

First degree robbery is defined in KRS 515.020:

(1) A person is guilty of robbery in the first degree when, *in the course of committing a theft,* he uses or threatens the immediate use of physical force upon another person *with the intent to accomplish the theft* and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

(emphasis added). In interpreting this statute, it is helpful to turn to the official commentary to KRS 515.030, which was cited with approval in *Morgan v. Commonwealth,* Ky., 730 S.W.2d 935 (1987). This commentary states, in relevant part:

In another respect, however, KRS 515.030 makes an important change in the traditional robbery offense. This change results from the language, 'in the course of committing theft,' which is intended to expand the scope of robbery to permit a conviction *even though the theft was incomplete.* The reason for this expansion was explained as follows in the Commentary to the proposed Michigan Code:

The present approach is that unless property is actually taken from the person or presence of the victim, there is no robbery ... This emphasizes the property aspects of the crime and treats it as an aggravated form of theft. *If, however, one is primarily concerned about the physical danger or appearances of physical danger to the citizen, and his inability to protect himself against sudden onslaughts against his person or property, then the actual taking of property diminishes in importance ...* For this reason, [the revision utilizes] the Model Penal Code language of 'in the course of committing theft' which extends from the attempt stage through the phase of flight. Michigan Revised Criminal Code Sec. 3310, Commentary at 257 (1967).

*With this change, robbery, as an offense against the person, is emphasized while robbery, as an offense against property, is de-emphasized.*

*Morgan* at 937–38 (emphasis added). This commentary makes clear that robbery "is viewed 'as a use of force to facilitate theft and not . . . as a forcible taking from the person.' " *Id.* at 937 (*citing* the official commentary to KRS 515).

We agree with this interpretation. Foremost, robbery is a crime against a person. While theft or attempted theft is an element, the more severe punishment provided by law recognizes the inherent danger associated with taking or attempting to take property from another by force or threat of force. This view was recognized in *Lamb v. Commonwealth*, Ky., 599 S.W.2d 462, 464 (1979) as follows:

> [W]e view the first-degree robbery provision as a deterrent to assaulting an individual, while armed, with the intention of unlawfully obtaining his property whether any of that property is actually taken or not.

■ Moreover, a mere division of labor between robbers in the commission of the crime does not preclude conviction of each as a principal. In so holding, we adhere to the common view that

> Generally, all who are present at the commission of a robbery, rendering it countenance and encouragement, and ready to assist if needed, are liable as principal actors. *To be liable, the accused need not to have taken any money from the victim with his own hands,* or actually participated in any other act of force or violence; it is sufficient that he came and went with the robbers, was present when the robbery was committed, and acquiesced therein.

67 Am.Jur.2d, Robbery § 9, p. 62 (emphasis added).

■ The standard of appellate review for the denial of a directed verdict motion is whether "under the evidence as a whole it would be clearly unreasonable for a jury to find guilt." *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991); *Dishman v. Commonwealth,* Ky., 906 S.W.2d 335, 341 (1995). Credibility and weight of the evidence are matters within the exclusive province of the jury. *Estep v. Commonwealth,* Ky., 957 S.W.2d 191, 193 (1997); *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1991).

■ According to this standard, there was ample evidence for the jury to infer that Smith was in the course of committing a theft and had the intent to accomplish the theft by force. Evidence was presented at trial showing that on the day of the crime, Smith arrived with Spicer at the victim's residence. Sometime thereafter, Smith ordered the victim, "Lay down or I'll shoot your brains out." Smith also told the victim he was "a dead duck." While Smith held the victim at gunpoint, Spicer reached into the victim's pockets and asked him where the money was. Although alternate versions of the events at issue were presented to the jury, it is not within a reviewing court's authority to disturb the jury's verdict absent an indication that the verdict was clearly unreasonable. Here, there was no such indication, and the jury's verdict must stand. The view of first degree robbery as an offense primarily against the person and as a crime capable of being divided amongst principals gives credence to this verdict.

■ A secondary issue is whether this Court should review other claims of error Smith raised to the Court of Appeals but which were deemed moot by virtue of the reversal. Pursuant to CR 76.21(1), issues raised in the original appeal that are not included in the motion for discretionary review must be presented in a cross motion for discretionary review. Otherwise, the issues raised on appeal but not decided will be treated as settled against the appellant in that court upon subsequent appeals. *Commonwealth Transp. Cabinet Dep't of Hwys. v. Taub,* Ky., 766 S.W.2d 49, 51–52 (1988). In Smith's brief to this Court, he

requests a remand to the Court of Appeals to decide the other claims in the event of a reversal on the directed verdict issue. This request, however, is procedurally inadequate. Thus, the other claims are deemed to have been decided adversely to Smith.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the Perry Circuit Court judgment is hereby reinstated.

COOPER, GRAVES, KELLER, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.