**James S. BROOKS, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY**
**Appellee.**

**No. 2005–SC–000319–MR.**

Supreme Court of Kentucky.

March 22, 2007.

Emily Holt Rhorer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

LAMBERT, Chief Justice.

Appellant, James S. Brooks, was convicted of manufacturing methamphetamine, trafficking in methamphetamine and possession of drug paraphernalia. His arrest followed police discovery of a methamphetamine lab in his residence. Appellant attempted to prove that others were living in his residence at the time and that he had no involvement with the lab. Despite this defense, a jury convicted Appellant and he was sentenced to twenty years for the manufacturing conviction and ten years for the trafficking conviction, to run consecutively for a total of thirty years. A twelve-month sentence was imposed for the possession conviction to run concurrently with the thirty-year sentence. He appeals to this Court as a matter of right.[1]

Appellant contends that his convictions for manufacturing and trafficking violate double jeopardy principles; that there was insufficient evidence to instruct the jury on first-degree trafficking; and that he was prejudiced by improper comments made in the Commonwealth's closing argument. In addition, he asserts error in the trial court's evidentiary rulings to admit ledgers of drug transactions and evidence of other crimes or bad acts.

Appellant's double jeopardy claim is not preserved. However, double jeopardy violations are treated as an exception to the general rules of preservation. Failure to raise an issue in the trial court normally precludes appellate review, absent manifest injustice.[2] However, a double jeopardy violation may be reviewed on appeal regardless of a failure to raise it

---

1. Ky. Const. § 110(2)(b).

2. RCr 10.26.

in the trial court.[3] Despite the difficulty inherent in analyzing a claim without the benefit of any context from its presentation to the trial court, a failure of preservation "should not result in permitting a double jeopardy conviction to stand."[4]

■ Appellant asserts that his convictions for both trafficking and manufacturing the same methamphetamine violate double jeopardy principles because one act—namely, manufacturing methamphetamine—is proscribed by both statutes. The jury instructions reveal that Appellant's trafficking conviction required a finding of "intent to sell" instead of manufacturing. Notwithstanding this distinction between the two offenses in the jury instructions, there are statutory uncertainties which require further analysis for an understanding of methamphetamine control laws.

To understand the current statutory scheme, it is necessary to review its history. Prior to 1998, there were no statutes specifically applicable only to methamphetamine. Rather, the statutes applicable to all Schedule I and II narcotic drugs applied to methamphetamine.[5] And while "manufacturing" was defined by the statute,[6] there was no specific statute criminal-

izing the manufacture of narcotic drugs.[7] Instead, manufacturing was included in the definition of "trafficking." Thus, the unlawful manufacture of a schedule I or II narcotic drug constituted the offense of trafficking and there was no possibility of being convicted of both manufacturing and trafficking. This scheme was consistent with traditional notions of double jeopardy.

However, in 1998, KRS 218A.1412, the general trafficking statute applicable to Schedule I and II narcotic drugs was amended to explicitly exclude methamphetamine from its ambit.[8] Simultaneously, KRS 218A.1431,[9] KRS 218A.1432 [10] and KRS 218.1435,[11] applicable only to methamphetamine, were enacted. KRS 218A.1431 included definitions for "manufacturing" and "trafficking" applicable only to methamphetamine and the definitions applicable to other controlled substances were amended to exclude the new methamphetamine statute, KRS 218A.1431.[12] The new definitions relating to methamphetamine contained one crucial variation from the general definitions. The definition of "trafficking" in methamphetamine did not include "manufacturing" methamphetamine.[13] Furthermore, two of the new statutes, KRS 218A.1432 [14] and KRS 218A.1435,[15] clearly designated manufac-

**3.** *Baker v. Commonwealth,* 922 S.W.2d 371, 374 (Ky.1996).

**4.** *Sherley v. Commonwealth,* 558 S.W.2d 615, 618 (Ky.1977).

**5.** *See* KRS 218A.1412 (1992), amended by Ch. 606, H.B. 455 (1998).

**6.** *See* KRS 218A.010(11) (1996) (This definition has been renumbered several times prior to and after 1996. The current definition is 218A.010(16)).

**7.** *See generally* KRS Chapter 218A.

**8.** Kentucky Laws Ch. 606 § 63 (1998) (amended 2000).

**9.** Kentucky Laws Ch. 606 § 58 (1998).

**10.** Kentucky Laws Ch. 606 § 59 (1998).

**11.** Kentucky Laws Ch. 606 § 60 (1998) (repealed 2000).

**12.** *See* KRS 218A.010(11) and (24) (1998) (current version at KRS 218A.010(16) and (34)).

**13.** KRS 218A.1431(3).

**14.** Kentucky Laws Ch. 606 § 59 (1998).

**15.** Kentucky Laws Ch. 606 § 60 (1998) (repealed 2000).

turing methamphetamine and trafficking in methamphetamine as two separate offenses and provided different penalties for each. Thus, the 1998 statutory scheme clearly allowed a conviction for both manufacturing methamphetamine and trafficking in methamphetamine.

However, prior to Appellant's offense[s], the statutory scheme was again amended. In 2000, KRS 218A.1435 which had defined the offense and provided the penalty for trafficking in methamphetamine was repealed.[16] Concurrently, the methamphetamine exception in the general trafficking statute, KRS 218A.1412, was removed, merging the offense of trafficking in methamphetamine into the general trafficking statute for any Schedule I or II narcotic drug.[17] However, the definition of trafficking specific to methamphetamine was not repealed, and it remains in effect.[18] Thus, there is a discrepancy in the current scheme stemming from the conflicting definitions of "trafficking" as outlined above. Under the "trafficking" definition applicable to the general statute, KRS 218A.1412, manufacturing would appear to be a lesser included offense of trafficking, and a conviction for both offenses would be proscribed. But that construction would ignore the definition that is specific to trafficking in methamphetamine. From this state of affairs, we must discover legislative intent. First, under prevailing law, manufacturing methamphetamine (a Class B felony)[19] is a greater offense than trafficking in methamphetamine (a Class C felony).[20] Additionally, though KRS 218A.1412 directs us to the generally applicable definition of "traffic," this definition explicitly excepts from its purview KRS 218.1431. Thus, KRS 218A.1412 directs us back to the trafficking definition specific to methamphetamine. The legislature's failure to repeal the trafficking definition that is specific to methamphetamine strongly suggests a legislative intent that such definition continue to be utilized.

■ When presented with a statutory conflict whereby one interpretation would render a portion of a statute meaningless and the other would harmonize and give effect to both provisions, rules of statutory construction require the interpretation that harmonizes the statutes and prevents a part of a statute from becoming meaningless or ineffectual.[21] Thus, utilizing the definition in KRS 218A.1431(3), the statute specific to methamphetamine, Appellant's intent to sell the methamphetamine he had manufactured constituted the separate offenses of manufacturing methamphetamine and trafficking in methamphetamine.

■ Next, Appellant asserts that the evidence was insufficient to support a conviction of first-degree trafficking in methamphetamine. As Appellant predicates much of this argument on his contention that drug ledgers were improperly admitted into evidence, we will address these issues together. The Commonwealth contends that Appellant failed to preserve the issue because he did not object to the admission of the ledgers. However, defense counsel did make a continuing objection to testimony regarding the ledgers based on lack of foundation. Thus, we will

**16.** Kentucky Laws Ch. 169 § 2 (2000).

**17.** Kentucky Laws Ch. 169 § 1 (2000).

**18.** KRS 218A.1431(3).

**19.** KRS 218A.1432(2).

**20.** KRS 218A.1412(2).

**21.** *Commonwealth v. Phon,* 17 S.W.3d 106 (Ky.2000); *DeStock No. 14, Inc. v. Logsdon,* 993 S.W.2d 952 (Ky.1999).

review this claim of error as a preserved question.

Three notebooks were found on Appellant's kitchen table containing handwritten names and amounts. The notebooks were offered into evidence and Deputy Bill Mills testified that the notations indicated money that was paid or owed to Appellant. Defense counsel objected because the notations themselves did not reference Appellant. After the trial court sustained the objection, the Commonwealth elicited from Deputy Mills facts relating to his training and experience. Deputy Mills testified that he had investigated over a hundred similar cases and that he had observed similar ledgers or entries in almost every case. Based on this experience, Deputy Mills was allowed to testify that the entries indicated owed or paid money, that "someone's keeping track of a money trail."

Appellant contends that the drug ledgers were not properly authenticated or identified as required by KRE 901 and suggests that witness or expert identification of the handwriting was required for authentication or identification. However, KRE 901(b)(4) provides that circumstantial evidence may be used to connect a writing to its alleged author. Here, the notebooks were found on the kitchen table of Appellant's residence. Even though no one was present in the residence at the time of the search by law enforcement officers, the presence of other of Appellant's possessions in the residence indicated he was presently living there and there was other testimony to that effect. In *Dixon v. Commonwealth,*[22] this Court held admission of a sheet of paper with entries similar to those in the instant case to be proper where the paper was found in the glove compartment of the vehicle the defendant was operating.

*Dixon* also addressed the propriety of a law enforcement officer rendering opinion testimony as to what such entries or notations mean. This Court recognized that such testimony was admitted almost routinely in drug cases and upon this understanding and the fact that a proper foundation was laid regarding the law enforcement officer's training and experience, we concluded in *Dixon* that admission of the paper and opinion testimony concerning the paper did not constitute an abuse of trial court discretion. Likewise, in the instant case, a proper foundation was laid regarding Deputy Mills' training and experience, the location of the ledgers was established and the premises was connected to Appellant. As the trial court heard the evidence, we cannot say it abused its discretion in admitting the ledgers or Deputy Mills' testimony concerning the ledgers.

■■ Furthermore, there is no merit in Appellant's claim that the evidence was insufficient to convict him of trafficking in methamphetamine. In evaluating the sufficiency of the evidence, this Court must consider all evidence favoring the Commonwealth as true and from that evidence, determine whether it is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty of each and every element of the crime.[23] Not only did the drug ledgers permit an inference that Appellant was selling methamphetamine, but there was also testimony that a scale was found in Appellant's residence. Additionally, the sheer number of HCL generators discovered permit an inference that more meth-

**22.** 149 S.W.3d 426 (Ky.2004).

**23.** *Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991).

amphetamine was being produced than would be needed for personal use.

Next, Appellant argues that he was prejudiced by the admission of other crimes or bad acts evidence. Conceding failure to preserve the issue, Appellant requests review for palpable error pursuant to RCr 10.26. To prove palpable error, Appellant must show the probability of a different result or error so fundamental as to threaten his entitlement to due process of law.[24] "When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[25]

Appellant claims palpable error in the admission of portions of Deputy Mills' testimony including his statement that there was an ongoing drug investigation on Appellant and his statement that a pipe recovered during the search tested positive for marijuana even though Appellant was not charged with any offense involving marijuana. However, we note that Appellant was charged with drug paraphernalia. Also, Deputy Mills' statement concerning an ongoing investigation was made during his explanation of how he had become involved in this particular case. We agree with the Commonwealth that this passing reference made by Deputy Mills does not constitute palpable error.

Appellant's final contention is that he was prejudiced by the Commonwealth's comment that beyond a reasonable doubt was not equivalent to beyond all doubt. No contemporaneous objection was made to preserve this issue. Again, Appellant requests review for palpable error under RCr 10.26. *Commonwealth v. Callahan*[26] clearly prohibits counsel from commenting on the meaning of the phrase "reasonable doubt." While it is disturbing that the rule in *Callahan* continues to be violated more than twenty years after it was announced, the violation in this case did not constitute manifest injustice.

Specifically, the Commonwealth correctly told the jury that the standard was guilt beyond a reasonable doubt. However, the Commonwealth erred in contrasting the phrase with beyond "all doubt." Nonetheless, this was the extent of the improper comment. There was no attempt to illustrate the standards by examples or hypotheticals as has been done in other cases which have come before this Court.[27] The Commonwealth's comment in this case is more akin to *Johnson v. Commonwealth.*[28] In *Johnson* we concluded that contrasting the standard with the phrase "beyond a shadow of a doubt," did not constitute reversible error. Though we do not condone the violation of the *Callahan* rule, it did not rise to the level of manifest injustice.

For the foregoing reasons, Appellant's convictions are affirmed.

McANULTY, MINTON, NOBLE, and SCHRODER, JJ., concur.

CUNNINGHAM and SCOTT, JJ., concur with the result, however, do not believe that the Commonwealth Attorney's statements concerning reasonable doubt were inappropriate, nor in violation of *Callahan*.

24. *Martin v. Commonwealth,* 207 S.W.3d 1 (Ky.2006).

25. *Id.* at 5.

26. 675 S.W.2d 391 (Ky.1984).

27. *See, e.g., Marsch v. Commonwealth,* 743 S.W.2d 830 (Ky.1987).

28. 184 S.W.3d 544 (Ky.2006).

·See *Johnson v. Commonwealth,* 184 S.W.3d 544 (Ky.2006). ·