Samuel MORGAN, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2013–SC–000070–MR.

Supreme Court of Kentucky.

Feb. 20, 2014.

---

Roy Alyette Durham, II, Assistant Public Advocate, Department of Public Advocacy, Counsel for Appellant.

Jack Conway, Attorney General, James Hays Lawson, Assistant Attorney General, Office of Criminal Appeals, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Kara Rudolph was employed as a cashier clerk at Convenience for Less, an aptly named convenience store located in McCracken County. On the morning of December 4, 2011, Ms. Rudolph arrived at work, unlocked the door, and entered the store. Not intending to open the store to the public at that time, she locked the door behind her and entered her security code into the computerized security system. Soon thereafter, she took the trash out to the dumpster, locking the door behind her. When Ms. Rudolph returned to the store, she was confronted by the Appellant, Samuel Morgan. Morgan placed a knife to her side and stated, "I want the money, just give me the money." She unlocked the door and the two entered the store. Morgan proceeded to take in excess of $700 in cash and coins from the store's register and safe, which he placed in a sack. He then fled the store.

An investigating detective secured a copy of the store's surveillance video, from which he later obtained still shot photographs; A few days later, the police located a vehicle depicted in the surveillance video at the residence of Morgan's acquaintances, Robert Purefoy and Kimberly French. Robert Purefoy informed the police that, on the weekend of the robbery, he loaned his car to his sister, Tiffany Purefoy, who was Morgan's girlfriend at the time. Based on this information and further investigation, Morgan was subse-

quently arrested and indicted for robbery in the first degree and for being a persistent felony offender ("PFO") in the first degree.

A McCracken Circuit Court jury found Morgan guilty of robbery in the first degree and of being a persistent felony offender ("PFO") in the first degree. The jury recommended a sentence of imprisonment for a term of twenty years for the first-degree robbery conviction, enhanced to twenty-five years by the PFO conviction. The trial court sentenced Morgan in accord with the jury's recommendation. Morgan now appeals his judgment and sentence as a matter of right pursuant to the Ky. Const. § 110(2)(b). Three issues are raised and addressed as follows.

### Identification by Lay Witnesses

■ Morgan first argues that the trial court erred by allowing Robert Purefoy, Kimberly French, and another acquaintance, Renee Miller–Smith, to identify Morgan as the person on the store surveillance video and in the still shot photos. Morgan specifically asserts that this error violated the Kentucky Rules of Evidence. KRE 401; 402; 403; 602; 701. A trial judge's decision with respect to the relevancy of evidence is reviewed for an abuse of discretion. *Love v. Commonwealth,* 55 S.W.3d 816, 822 (Ky.2001).

### KRE 401–403

■ KRE 401 and 402 provide a well-established minimal relevancy standard. It is clear that the identification of Morgan as the man depicted in the video and still shot photos was highly relevant because identity was a contested issue. This is generally true in all cases involving surveillance video footage or still shot photos taken of an alleged assailant during the commission of a crime. In addition, the Commonwealth specifically argued before the trial court that it was necessary to present the testimony of witnesses familiar with Morgan's appearance at the time of the robbery because Morgan had since changed his facial hair. The testimony provided by these witnesses was therefore sufficient to satisfy the minimal relevancy standard.

Further, the probative value of the witnesses' testimony was not substantially outweighed by the danger of undue prejudice against Morgan. *See* KRE 403. We cannot conclude that allowing these three witnesses to identify Morgan as the man depicted in the video and still shot photos was needlessly duplicative. In fact, the trial record reflects uncertainty in the witnesses' testimony that may have actually strengthened Morgan's case. All three witnesses testified that, although they believed Morgan was the person depicted in the store surveillance video and still shot photographs, they were uncertain. These witnesses also testified that they had only seen Morgan a few times. In any event, the jurors were able to independently determine whether Morgan was the man present in the surveillance video and photos.

### KRE 701 and KRE 602

Morgan further asserts that the testimony of these three witnesses violated KRE 701 and KRE 602 by invading the province of the jury as the fact finder. He specifically contends that the trial judge erred by allowing these witnesses to testify to their opinions based on nothing more than the same evidence presented to the jury—the surveillance video and still photos. As previously noted, these three witnesses were not present during the robbery. Rather, they were Morgan's acquaintances who were familiar with his appearance at the time of the robbery.

■ ·KRE 701 limits opinion testimony by a lay witness to that which is "[r]ationally based on the perception of the witness; [and] ... [h]elpful to a clear understanding of the witness' testimony or the determination of a fact in issue." KRE 701(a)-(b). In addition, KRE 602 requires a witness to have personal knowledge before being allowed to testify about a subject. We have held that a lay witness "may not *interpret* audio or video evidence, as such testimony invades the province of the jury, whose job is to make determinations of fact based upon the evidence." *Cuzick v. Commonwealth,* 276 S.W.3d 260, 265–66 (Ky.2009) (emphasis in original). "It is for the jury to· determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness." *Gordon v. Commonwealth,* 916 S.W.2d 176, 180 (Ky.1995).

■ The present case does not implicate impermissible "narrative-style testimony" or any other improper description of video or photo images from a witness' perspective. *See Cuzick,* 276 S.W.3d at 265; *Mills v. Commonwealth,* 996 S.W.2d 473, 488 (Ky.1999) (overruled in part on other grounds by *Padgett v. Commonwealth,* 312 S.W.3d 336 (Ky.2010)). Rather, the three witnesses merely identified Morgan as the man present in the surveillance video and still photos. We conclude that this testimony was rationally based on the witnesses' personal knowledge from prior exposure to Morgan's physical appearance.

Federal cases also prove instructive. For example, in applying FRE 701, the United States · Court of Appeals for the Seventh Circuit held that "a lay witness may testify regarding the identity of a person depicted in a surveillance photograph 'if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" *United States v.*

*White,* 639 F.3d· 331, 336 (7th Cir.2011) (citing *United States v. Towns,* 913 F.2d 434, 445 (7th Cir.1990) (holding that the district court did not err in admitting lay opinion testimony from defendant's ex-girlfriend that defendant was one of the robbers in the bank surveillance video)).

In sum, the testimony of these three witnesses was relevant, probative, and otherwise proper lay witness testimony. Thus, we cannot conclude that the trial court erred.

### Continuance of Trial

■ Morgan next argues that the trial court erred by denying his motion for a continuance of trial. Specifically, he contends that the trial court's ruling deprived him of his due process rights. *See, e.g., Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). We review a trial court's denial of a motion for a continuance under an abuse of discretion standard. *Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky.1991), *overruled on other grounds by Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky.2001).

■ RCr 9.04 authorizes a trial court to grant a continuance "upon motion and sufficient cause shown by either party...." Whether to grant a continuance is determined on a case-by-case basis wherein the trial court is directed to consider the following:

length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.

*Snodgrass,* 814 S.W.2d at 581.

Morgan's ex-girlfriend, Tiffany Purefoy, was originally scheduled to testify as a

witness for the defense in order to corroborate Morgan's alibi that he was at home with her during the robbery. However, on the afternoon of trial, Ms. Purefoy suddenly changed her story and was then scheduled to be called as a witness for the Commonwealth. Morgan orally moved the court for a continuance to investigate and speak with Ms. Purefoy due to her changed testimony. The trial court denied the motion and allowed Ms. Purefoy to testify wherein she stated that Morgan, wearing wet clothes, woke her up and dumped a pillow case of money onto the bed and said, "I got that bitch."

### Identifiable Prejudice

■ The first six *Snodgrass* factors arguably weigh in favor of Morgan, or at least do not weigh against him. The parties concede that this was not an especially complex trial. However, Morgan has failed to demonstrate that the trial court's denial of the continuance resulted in identifiable prejudice. *See Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky.2013) ("Identifiable prejudice is especially important."). Further, "[c]onclusory or speculative contentions that additional time might prove helpful are insufficient." *Id.* (citing *Hudson v. Commonwealth*, 202 S.W.3d 17, 23 (Ky.2006)).

■ Morgan's primary argument here is that Ms. Purefoy's change in testimony the morning of trial completely destroyed his alibi, therefore eliminating the defense he had been preparing for months. However, Morgan asserts that Ms. Purefoy had previously informed the police, the Commonwealth, and Morgan's investigator that she was with him all night and that she did not know anything about the robbery. Accordingly, Morgan could have introduced these prior inconsistent statements for impeachment purposes, as well as substantive evidence, in light of Ms. Purefoy's sudden reversal at trial. *See* KRE 802;

*Jett v. Commonwealth*, 436 S.W.2d 788 (Ky.1969).

■ Further, Ms. Purefoy's change in testimony did not foreclose Morgan's right to testify on his behalf and present his alibi. He testified as scheduled. Morgan and his counsel must have also anticipated that, even in the. absence of Ms. Purefoy's sudden catharsis, other scheduled witnesses for the Commonwealth would present testimony contradicting Morgan's story. In any event, "[W]hen the evidence is contradictory, the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide." *Roark v. Commonwealth*, 90 S.W.3d 24, 38 (Ky. 2002). Accordingly, the jury was allowed to weigh the credibility of all witnesses, including Morgan and Ms. Purefoy.

Moreover, there is no suggestion in the present case that the Commonwealth failed to disclose exculpatory evidence. *See Anderson v. Commonwealth*, 63 S.W.3d 135, 138 (Ky.2001) (where trial court's failure to grant continuance constituted an abuse of discretion). In contrast, Ms. Purefoy's testimony was consistent with the Commonwealth's theory of the case and the testimony of several other witnesses, including a positive in-court identification of Morgan by Kara Rudolph, the store clerk. *See Taylor v. Commonwealth*, 545 S.W.2d 76, 77 (Ky.1976) (though denial of continuance was improper, reversal was not required because evidence of guilt was overwhelming; thus, prejudice was not shown).

We conclude that Appellant was given "a fair opportunity to defend against the [Commonwealth's] accusations [and to] confront and cross-examine witnesses...." *Chambers*, 410 U.S. at 294, 93 S.Ct. 1038. Accordingly, the trial court did not abuse its discretion in denying Morgan's motion for a continuance.

### *Directed Verdict*

 Morgan's final assignment of error is that the trial court erred in denying his motion for a directed verdict of acquittal for the offense of robbery in the first degree. We will reverse the trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991) (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983) (emphasis added)). Our review is confined to the proof at trial and the statutory elements of the alleged offense. *Lawton v. Commonwealth,* 354 S.W.3d 565, 575 (Ky.2011).

In the present case, Morgan was charged with robbery in the first degree. KRS 515.020; *Ray v. Commonwealth,* 550 S.W.2d 482, 484–85 (Ky.1977). The record establishes that the Commonwealth presented sufficient evidence that would allow a jury to reasonably convict Morgan under KRS 515.020. First, Kara Rudolph, the store clerk, positively identified Morgan as the assailant. Second, three other witnesses also testified that Morgan appeared to be the man on the surveillance video. Third, the Commonwealth introduced photographs of items discovered during a search of Morgan's residence, which included a hooded jacket, a black knit cap, and a knife. These items were consistent with Kara Rudolph's testimony concerning what Morgan was wearing during the robbery and the weapon that he used. Lastly, Ms. Purefoy testified that Morgan made colorfully incriminating statements regarding the robbery while clutching a pillow case full of loot.

Reviewing the evidence as a whole, it was not clearly unreasonable for the jury to convict Morgan of first-degree robbery. Thus, we find that the trial court did not err in denying Morgan's motion for a directed verdict of acquittal.

### *Conclusion*

For the foregoing reasons, the judgment of the McCracken Circuit Court is hereby affirmed.

All sitting. All concur.