RENDERED: OCTOBER 29, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0066-MR

CHAZERAE ME'LON TAYLOR, SR.                                    APPELLANT

V.

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ERNESTO SCORSONE, JUDGE
NO. 16-CR-01162-1

COMMONWEALTH OF KENTUCKY                                      APPELLEE

AND

2019-SC-0138-TG

CHAZERAE ME'LON TAYLOR, SR.                                    APPELLANT

V.

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ERNESTO SCORSONE, JUDGE
NO. 16-CR-01162-1

COMMONWEALTH OF KENTUCKY                                      APPELLEE

**OPINION OF THE COURT BY JUSTICE VANMETER**

**AFFIRMING**

Chazerae Taylor appeals as a matter of right[1] from the Fayette Circuit

Court judgment sentencing him to twenty years' imprisonment after a jury

---

[1] Ky. Const. § 110(2)(b).

convicted him of wanton murder and four counts of first-degree wanton endangerment. On appeal, Taylor argues that the trial court erred by denying his motions for a directed verdict of acquittal on these charges. After review of the record and applicable law, we affirm.

## I.  BACKGROUND

At approximately 3:50 a.m. on October 16, 2016, seventeen-year-old Trinity Gay was fatally shot in the parking lot of a Cook Out Restaurant in Lexington, located next to the Waffle House. Gay and others were hanging out in the Cook Out parking lot after leaving a house party. That parking lot was known as a "hang out" spot for people, with a "party like" atmosphere. At the time, Taylor was also at the Cook Out, circulating through the parking lot with a gun in hand looking for the man who earlier that night had robbed his son, D'Markeo, and his friend Raekwon Berry.

Taylor fired multiple gunshots into the air to disperse the crowd of people. As people scattered, others in the vicinity returned fire. A Waffle House security guard heard one shot, looked up from his phone, and saw a man matching Taylor's general description with a gun in the air, who then fired three additional shots. The security guard observed multiple people fire shots in response. A Waffle House server was outside on a smoke break when she heard a vehicle's tires squealing/doing a burn out in the Cook Out parking lot and then saw a man pull out a gun and shoot into the air. She did not hear any other gunshots before she saw the man shoot into the air. She then observed another person in the Waffle House parking lot start shooting towards the Cook Out.

2

Amidst the gunfire, Gay was hit by a .45 caliber bullet. The .45 caliber handgun which fired the fatal shot was never found. Other shell casings found in the parking lot were .38 caliber, which is the caliber handgun Taylor fired. Forensic examination of projectiles and spent shell casings confirmed that multiple people had opened fire in response to Taylor's gunfire.

At the close of the Commonwealth's case at trial, Taylor moved for a directed verdict on the wanton murder charge and the four counts of wanton endangerment. He renewed that motion before the case was submitted to the jury. The trial court denied his motions, and the jury convicted Taylor of wanton murder in the death of Gay and four counts of first-degree wanton endangerment with respect to four people in Gay's immediate vicinity. The trial court imposed the jury's recommended sentence of twenty years. Taylor now appeals.

## II. ANALYSIS

Taylor claims that the trial court erred by denying his motions for a directed verdict on the wanton murder and wanton endangerment charges as the evidence was insufficient to establish "aggravated wantonness" and to prove that his conduct caused Gay's death. We disagree.

The denial of a directed verdict motion is reviewed to determine whether "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017) (quoting *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991)).

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the

3

Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

*Benham,* 816 S.W.2d at 187. Thus, "there must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 187–88 (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3, 5 (Ky. 1983)). So long as the Commonwealth produces more than a mere scintilla of evidence to support the charges, a defendant's motion for directed verdict should be denied.

Three statutes are applicable to the case at hand—the statute creating the offense of murder, the statute defining the term "wantonly," and the statute governing causation. The jury convicted Taylor of murder under a theory of aggravated wanton conduct under KRS[2] 507.020(1)(b), which requires a person to act "under circumstances manifesting extreme indifference to human life . . . [and] wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." With respect to first-degree wanton endangerment, the jury found that Taylor engaged in conduct that created "a substantial danger of death or serious physical injury to another person." KRS 508.060(1).

The term "wantonly" is defined in relevant part as follows:

A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the

---

[2] Kentucky Revised Statutes.

4

> circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

KRS 501.020(3).

In other words, "wantonness is the awareness of and conscious disregard of a risk that a reasonable person in the same situation would not have disregarded[.]" *Robertson v. Commonwealth*, 82 S.W.3d 832, 835 (Ky. 2002). For both wanton murder and first-degree wanton endangerment, conduct must have transpired that manifests extreme indifference to the value of human life, *i.e.*, "aggravated wantonness." *Brown v. Commonwealth*, 174 S.W.3d 421, 426 (Ky. 2005). "To be convicted, the defendant must have both acted with the requisite mental state and created the danger prohibited by the statute." *Hall v. Commonwealth*, 468 S.W.3d 814, 829 (Ky. 2015).

Taylor maintains that when he fired gunshots into the air, it was not foreseeable that his conduct would set off a ripple effect of others' response gunfire, endangering bystanders and resulting in Gay's death. Accordingly, he argues that his conduct was not the proximate cause of Gay's death and that others' responsive gunfire was an unanticipated intervening, superseding event that cuts off his liability. He further avers that his act of aimlessly firing into the air in public, and not at a person or occupied vehicle, is not conduct that manifests extreme indifference to the value of human life.

The General Assembly has codified the concept of criminal causation within KRS 501.060: "Conduct is the cause of a result when it is an antecedent without which the result in question would not have occurred." KRS

5

501.060(1).  As Taylor was charged with wanton conduct, KRS 501.060(3) is

applicable:

> When wantonly . . .  causing a particular result is an element of an
> offense, the element is not established if the actual result is not
> within the risk of which the actor is aware . . .  unless:
>
> > (a)      The actual result differs from the probable result only
> > in the respect that a different person or different property is
> > injured or affected or that the probable injury or harm would
> > have been more serious or more extensive than that caused;
> > or
> >
> > (b)      The actual result involves the same kind of injury or
> > harm as the probable result and occurs in a manner which
> > the actor knows or should know is rendered substantially
> > more probable by his conduct.

"The question of whether an actor knew or should have known the result he

caused was rendered substantially more probable by his conduct is an issue of

fact."  KRS 501.060(4).  Indeed, "the plain intent of the statute is to have the

causation issue framed in all situations in terms of whether or not the result as

it occurred was either foreseen or foreseeable by the defendant as a reasonable

probability."  *Powell v. Commonwealth*, 189 S.W.3d 535, 538 (Ky. 2006) (citing

*Lofthouse v. Commonwealth*, 13 S.W.3d 236, 239 (Ky. 2000) (quoting Robert G.

Lawson & William H. Fortune, *Kentucky Criminal Law* § 2–4(d)(3), at 74

(1998)).[3]

As the Commentary to KRS 501.060 discusses,[4]

---

[3] Professors Lawson and Fortune state that "[t]he 'unintended victim' problem has been widely viewed as a problem of homicide, limited to situations in which aggression or unlawful conduct directed toward one person resulted in the death of another.  KRS 501.060 . . . recognizes that the problem can arise in cases involving all four mental states used in the Code to define crimes."  Lawson & Fortune, *Ky. Criminal Law* 74 n.182.

[4] KRS 500.100 provides that commentary "may be used as an aid in construing the provisions of this code."

> Once an act is found to be a cause in fact of a result and a substantial factor in bringing about that result, it is recognized as the proximate cause unless another cause, independent of the first, intervenes between the first and the result. And even then the first cause is treated as the proximate cause if the harm or injury resulting from the second is deemed to have been reasonably foreseeable by the first actor.

KRS 501.060 Kentucky Crime Commission/LRC Commentary (1974).

KRS 501.060 contemplates that "many of the matters now treated as 'causation' questions should be dealt with as problems of *mens rea.*" *Id.* Both KRS 501.060(2) and (3),[5] attempt to "provid[e] a uniform standard by which to measure criminal responsibility for a result which occurs in a manner different from that intended. That standard requires that in every case the issue of responsibility turns on whether the actual result 'occurs in a manner which the actor knows or ought to know is rendered substantially more probable by his conduct.'" *Id.* "[T]he main thrust of this approach is to place emphasis upon culpable mental states rather than causation and to recognize that a large part of the responsibility for solving issues of this type must rest squarely upon the decision makers[.]" *Id.*

Accordingly, Taylor's culpability lies with the fact-finder's determination of whether he knew or should have known that his conduct would render it substantially more probable that return gunfire would result, thereby causing Gay's death and placing bystanders at risk of serious physical injury and/or death. What the defendant "knew or should have known with respect to the probable consequences of his conduct, is crucial to determining the issue of his

---

[5] KRS 501.060(2) applies "[w]hen intentionally causing a particular result is an element of an offense[.]"

7

criminal liability." *Robertson,* 82 S.W.3d at 836–37 (defendant's act of fleeing from and resisting police constituted wanton conduct causing death of officer in pursuit).

With respect to whether others' responsive gunfire was an intervening event that cut off the chain of causation between Taylor's conduct and Gay's death and the endangerment to those near her, the inquiry is the same: "Did the defendant know, or have reason to know, that the result (as it actually occurred) was rendered substantially more probable by his conduct?" Lawson & Fortune, *Ky. Criminal Law* § 2–4(d)(2) at 73. "The similarity between the yardstick of *Bush [v. Commonwealth,* 78 Ky. 268 (1880)](natural and probable consequences) and the one required by [KRS 501.060] (foreseeability of the actual result as a reasonable probability) is obvious and substantial." *Id.* at 74.

Case law is clear that a wide variety of actions under differing circumstances may constitute aggravated wanton conduct. In addressing the sufficiency of the evidence for wanton endangerment, this Court has held that "[f]iring a weapon in the immediate vicinity of others is the prototype of first degree wanton endangerment." *Swan v. Commonwealth,* 384 S.W.3d 77, 102 (Ky. 2012) (quoting Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 9–4(b)(2) at 388, and n.142 (1998)) (citations omitted).[6] In *Swan,* the

---

[6] As the commentary to KRS 508.060 notes: "The offenses created by KRS 508.060 and 508.070 can best be described by use of this hypothetical situation: D, with no intent to kill or injure but with an awareness of the risk involved, shoots a gun into an occupied building, thereby consciously disregarding the risk of death or injury to its occupants.... If D's act causes neither [death nor physical injury], he has committed the offense of wanton endangerment. . . . The types of conduct indicating such character and punishable under these two statutes are such things as discharging firearms in public, pointing firearms at others, obstructing public

8

defendants, armed with handguns, invaded and robbed a home, firing into the ceiling, as well as toward specific victims in the living room located in the front of the home. 384 S.W.3d at 84–86. This Court concluded that a directed verdict should have been granted on first-degree wanton endangerment regarding the person who was hiding in the back bedroom of the house, as no proof was presented that the defendant shot in her direction. *Id.*

Contrast the holding in *Swan* to *Hall*, wherein we found sufficient evidence to uphold first-degree wanton endangerment convictions for children who were somewhere inside the house that the defendant shot through from across the street using a scoped .30-06 deer rifle, killing the children's parents. 468 S.W.3d at 829. We analogized those facts to *Paulley v. Commonwealth*, 323 S.W.3d 715 (Ky. 2010), in which the Court upheld the trial court's denial of a directed verdict on nine counts of wanton endangerment, one for each person present in the home at the time the defendant fired three shots from a shotgun into the closed doorway of the home. *Id.* at 723, 726. In affirming the denial of the directed verdict, the *Paulley* court did not consider the precise location of each of the victims inside the home, instead emphasizing that with respect to wanton endangerment, a single gunshot can endanger multiple people.

The determination of whether the defendant's conduct is "wanton" is one for the jury to make, considering the circumstances of the case. *See* KRS 507.020 Kentucky Crime Commission/LRC Commentary (1974). "Typical of

---

highways, and abandoning containers which are attractive to children." KRS 508.060 Kentucky Crime Commission/LRC Commentary (1974).

9

conduct contemplated for inclusion in 'wanton' murder is: shooting into a crowd, an occupied building or an occupied automobile; placing a time bomb in a public place; or derailing a speeding locomotive." *Id.*

A reasonable jury could have concluded that Taylor wantonly fired multiple shots into the air, amidst a crowd of people during the early morning hours, which set into motion the foreseeable response gunfire that resulted in Gay's death and created a substantial danger of death or serious physical injury to the four people in her immediate vicinity. *See e.g., Phillips v. Commonwealth,* 17 S.W.3d 870 (Ky. 2000) (upholding defendant's wanton murder conviction since a jury could "reasonably conclude that a person who deemed it necessary to arm himself before going to that neighborhood [to purchase crack cocaine from a street dealer] would have been aware of the risk that others in the neighborhood . . . would also be armed, and if fired upon, would return fire[]"). The four people in Gay's vicinity, for whom Taylor was convicted of first-degree wanton endangerment, all testified at trial as to their location when the bullets were fired and their nearness to Gay when she was shot. Their testimony, and all testimony presented, was for the jury to assess and weigh. *See Morgan v. Commonwealth,* 421 S.W.3d 388, 393 (Ky. 2014) ("[W]hen the evidence is contradictory, the credibility of witnesses and the weight to be given to sworn testimony are for the jury to decide[]" (citation omitted)).

Furthermore, a reasonable jury could have concluded that Taylor had reason to know that a shoot-out was rendered substantially more probable by his firing the initial, and multiple, shots into the air amid a late-night crowd

gathered in a parking lot to socialize. Evidence showed that Taylor went to the Cook Out looking for a fight: he armed himself with a handgun in preparation for confronting the man who had robbed his son earlier that day. Taylor was aware that the perpetrator had also taken a gun from another young man. Taylor entered a crowd of people, armed and on a mission, and fired gunshots into the air with the intent to disperse the crowd so that he could locate his target. Indeed, by his own admission, Taylor began firing gunshots into the air to clear the crowd: he knew the crowd would panic and disperse, and he counted on it. Forensic evidence showed that multiple people returned fire, a testament to the likelihood that a dangerous reaction to Taylor's provocation might occur. When bullets start flying in a crowd of people, no one should be surprised when someone gets shot.

Based on the evidence presented, the Commonwealth met its burden of persuasion and therefore the trial court did not err by denying Taylor's motions for a directed verdict of acquittal on the wanton murder and wanton endangerment charges.

### III.   CONCLUSION

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Jared Travis Bewley
Assistant Public Advocate
Department of Public Advocacy

11

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

James Coleman Shackelford
Assistant Attorney General