RENDERED:  SEPTEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0031-MR

MAURICE GASAWAY                                          APPELLANT

APPEAL FROM HARDIN CIRCUIT COURT
v.        HONORABLE KEN M. HOWARD, JUDGE
ACTION NO. 18-CR-00927

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND TAYLOR, JUDGES.

TAYLOR, JUDGE:  Maurice Gasaway brings this appeal from August 30, 2019, judgments of the Hardin Circuit Court upon jury verdicts finding Gasaway guilty of possession of marijuana and possession of a controlled substance, heroin, and sentencing him to thirty-days' incarceration and to three-years' imprisonment to be served consecutively.  We affirm.

BACKGROUND

The facts underlying Gasaway's arrest and subsequent indictment are as follows. On the morning of August 30, 2018, Gasaway was working for his employer, Knight's Mechanical, located in Hardin County, Kentucky. Gasaway and two other employees were working in the sheet metal shop at Knight's Mechanical. One of Gasaway's co-workers, Austin McClanahan, was walking across the shop when he noticed a plastic bag about the size of a fingernail on the floor. Just as McClanahan picked up the plastic bag, his supervisor, Josh Bush, walked up behind McClanahan. Bush instructed McClanahan to take the plastic bag to Bush's office. McClanahan complied, went into Bush's office, and placed the bag on Bush's desk. Bush covered the small plastic bag with a sheet of paper. Suspecting the plastic bag contained drugs, Bush called his supervisor. Bush's supervisor then contacted his supervisor, Jeremy Knight, and informed him of the situation.

After lunch, Knight went to Bush's office. Knight looked at the plastic bag and then reviewed security video footage from that morning of the area where the bag was found. Knight believed the video footage revealed that the plastic bag fell from Gasaway's pocket when he removed his cell phone. After reviewing the video footage, Knight gave the plastic bag to another employee,

-2-

Brian Tharpe. Tharpe contacted Detective Robert Dover of the Greater Hardin County Narcotics Task Force.

The following day, Detective Dover came to Knight's Mechanical. Tharpe gave the plastic bag to Detective Dover, and he conducted a field test on the substance. The substance tested positive for heroin. Tharpe then showed Detective Dover the video footage from the previous morning. Detective Dover, likewise, believed that the video depicted Gasaway dropping the plastic bag while he was retrieving a cellphone from his pocket. Thereafter, Detective Dover and two other police officers on the scene approached Gasaway. The officers explained to Gasaway they were there because of the heroin. Gasaway was handcuffed, given his Miranda rights, and escorted outside. Once outside, Gasaway realized that two parole officers[1] were also present and became belligerent. Gasaway was then placed in the back of a police cruiser.

A search of Gasaway's person did not yield anything illegal but the police officers did discover a key fob in Gasaway's pocket. The key fob unlocked the truck Gasaway drove to work which was parked nearby in the company parking lot. Detective Dover ran the license plate on the truck and discovered it

---

[1] Maurice Gasaway was on parole as the result of a previous drug-related offense for trafficking in a controlled substance, first degree, cocaine, and for possession of a handgun by a convicted felon.

was registered to a Michelle Gasaway at the same address as Gasaway. Gasaway denied a request for consent to search the truck; nevertheless, a search ensued.

Detective Dover found a plastic bag that contained two separate plastic bags of marijuana in the console of the truck. There was also a plastic bag containing a pill with a "Superman" insignia printed on it. The pill was believed to be ecstasy but was later tested and determined to be methamphetamine. Additionally, Detective Dover discovered a few marijuana roaches in a cupholder ashtray and marijuana shake around the ashtray. The search also yielded an object known as a "Whizzanator," which drug users frequently utilize to thwart drug detection in urinalysis testing. Gasaway asked Detective Dover if he was going to jail. Detective Dover responded in the affirmative and further explained that Gasaway was facing charges for possession of methamphetamine, ecstasy, and heroin. Gasaway responded, "I'm not worried about the weed or ecstasy, and you damn sure didn't find no three grams of heroin. And in Louisville, that's just a citation." Commonwealth's Brief at 5.

On September 20, 2018, Gasaway was indicted by a Hardin County Grand Jury upon Possession of a Controlled Substance, First Degree, Heroin (Kentucky Revised Statutes (KRS) 218A.1415), Possession of a Controlled Substance, Second Degree, Schedule I Non-Narcotic, Ecstasy (KRS 218A.1416), and Possession of Marijuana (KRS 218A.1422). By Supplemental Indictment

dated March 28, 2019, Gasaway was also indicted upon one count of Possession of a Controlled Substance, First Degree, Methamphetamine (KRS 218A.1415).[2]

Gasaway filed a motion to suppress the evidence seized from his vehicle. The trial court conducted an evidentiary hearing, and by order entered April 25, 2019, the trial court denied Gasaway's motion to suppress. A jury trial ensued. By Trial Verdict and Judgment entered May 14, 2019, the trial court announced a hung jury as to the possession of heroin charge, not guilty upon the possession of methamphetamine charge, and guilty upon the possession of marijuana charge. The possession of methamphetamine charge was dismissed with prejudice. However, the trial court did not sentence Gasaway upon the guilty verdict for possession of marijuana at this time.

The Commonwealth elected to retry Gasaway upon the possession of heroin charge. Following the retrial, the jury found Gasaway guilty upon the possession of heroin charge. By Judgment and Order Imposing Sentence entered August 30, 2019, Gasaway was sentenced to three-years' imprisonment upon the possession of heroin charge. By separate order, also entered August 30, 2019, the trial court additionally sentenced Gasaway to thirty-days' incarceration upon the

---

[2] After laboratory testing revealed that the pill containing the "Superman" insignia was methamphetamine rather than ecstasy, the Commonwealth of Kentucky made a motion to dismiss the charge of possession of a controlled substance, second degree, schedule I non-narcotic, ecstasy, which the trial court granted. Thereafter, a Supplemental Indictment was returned charging Gasaway with possession of a controlled substance, first degree, methamphetamine.

possession of marijuana charge.  The sentences were ordered to be served consecutively.  This appeal follows.

Gasaway raises four issues in this appeal.  First, he contends the trial court erred by denying his motion to suppress the evidence seized from his vehicle after his arrest in violation of the Fourth Amendment to the United States Constitution and Section Ten of the Kentucky Constitution.  More particularly, Gasaway asserts that officers lacked probable cause to search his vehicle and that his status as a parolee did not subject him to unlimited warrantless searches.  Second, Gasaway asserts that the prosecutor presented an improper hypothetical regarding reasonable doubt during *voir dire* at the trial.  Third, he argues the trial court erred by allowing the introduction of evidence of his possession of methamphetamine and marijuana that was addressed in the first trial.  Finally, Gasaway argues that the trial court erred by allowing opinion testimony of the video that showed the heroin package falling out of Gasaway's pocket that resulted in his arrest.  We shall examine each issue in the order raised.

## STANDARD OF REVIEW

Our standard of review upon a trial court's denial of a motion to suppress evidence requires a two-step analysis.  First, the trial court's factual findings are conclusive if supported by substantial evidence.  *Milam v. Commonwealth*, 483 S.W.3d 347, 349 (Ky. 2015).  Second, the court's application

of law to those findings of facts is reviewed *de novo*. *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015). As concerns the remaining issues raised in this appeal, our standard of review will be abuse of discretion as discussed in the analysis for each issue raised.

## ANALYSIS

It is uncontroverted that at the time of the search, Gasaway was on parole and under the supervision of the Kentucky Department of Corrections. It is also well-settled that pursuant to the Fourth Amendment to the United States Constitution, persons on parole have a greatly diminished expectation of privacy. *See Samson v. California*, 547 U.S. 843, 848-49 (2006). In fact, "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation. . . . [P]arole is an established variation on imprisonment of convicted criminals[.]" *Bratcher v. Commonwealth*, 424 S.W.3d 411, 414 (Ky. 2014) (quoting *Samson*, 547 U.S. at 850). Paramount to this appeal, the Kentucky Supreme Court, in *Bratcher*, specifically held that "the Fourth Amendment presents no impediment against a warrantless and *suspicionless* search of a person on parole." *Id*. at 415.

Although the Kentucky Supreme Court has addressed a parolee's privacy rights as to a search under the Fourth Amendment of the United States Constitution, it has not addressed same under Section 10 of the Kentucky

Constitution. *See Bratcher*, 424 S.W.3d at 416 (holding "[w]e have not . . .

affirmed a construction of a parolees' privacy rights against police searches based

upon the Kentucky Constitution."). However, the Kentucky Supreme Court has

clearly recognized that Section 10 of the Kentucky Constitution is coextensive with

the Fourth Amendment to the United Sates Constitution. *Marino v.

Commonwealth*, 488 S.W.3d 621, 624 (Ky. App. 2016) (quoting *Watkins v.

Commonwealth*, 307 S.W.3d 628, 630 (Ky. 2010)).

In view of such precedent, we are constrained to adhere to same and

conclude that Section 10 of the Kentucky Constitution would, likewise, present no

impediment against a warrantless and suspicionless search of a parolee or his

vehicle.[3] Thus, it is irrelevant whether officers possessed reasonable suspicion to

search Gasaway's vehicle as it is unnecessary to possess such suspicion to search

the vehicle of a parolee. We, therefore, conclude that Gasaway's argument to the

contrary is without merit.

Gasaway's next argument on appeal is that during *voir dire* of the

potential jurors at the retrial for the possession of heroin charge, the

Commonwealth "improperly presented the jury with a hypothetical to explain what

---

[3] As an intermediate appellate court, pursuant to Rules of the Supreme Court 1.030(8)(a), we are bound to follow Kentucky Supreme Court precedent; however, we encourage the Kentucky Supreme Court to specifically address this issue as concerns an unreasonable search and seizure of a parolee under Section 10 of the Kentucky Constitution.

would satisfy the 'reasonable doubt' standard." Gasaway's Brief at 9. Gasaway acknowledges this issue is unpreserved but requests review for palpable error pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.26.

Pursuant to RCr 10.26, an unpreserved error may be reviewed and relief granted if appellant's substantial rights were affected and a manifest injustice resulted. *Kiper v. Commonwealth*, 399 S.W.3d 736, 747 (Ky. 2012). A manifest injustice occurs where the error "seriously affects the fairness, integrity[sic] or public reputation" of the judicial proceeding so as to be "shocking or jurisprudently intolerable." *Williams v. Commonwealth*, 462 S.W.3d 407, 410 (Ky. App. 2015). Furthermore, a trial court is granted broad discretion in its control over the *voir dire* examination pursuant to RCr 9.38. *Rogers v. Commonwealth*, 315 S.W.3d 303, 306-7 (Ky. 2010). Although it is certainly "within the discretion of the trial court to limit the scope of voir dire, that discretion is not boundless. Appellate review of such limitation is for abuse of discretion." *Id.* at 306-07 (quoting *Hayes v. Commonwealth*, 175 S.W.3d 574, 583 (Ky. 2005)). Our review shall proceed accordingly.

The specific statements made by the Commonwealth during *voir dire* upon Gasaway's retrial on the possession of heroin charge were as follows:

> We, the standard here is the highest standard in the legal community. Okay. It's beyond a reasonable doubt. You all have an opportunity to try a civil case, I don't wish that on you, but, um, if you do, they have a different

standard. Here, it's the high standard. Beyond a reasonable doubt.

I didn't say beyond any doubt. Okay. But beyond a reasonable doubt. The, we are not allowed to define that for you. Alright. We're just not allowed to. You have to come up, whatever that means to you. Okay. You, you come up with that on your own. We can't define if for you.

**But, I want to give you an example**. Alright. Has anyone in here ever heard of Tiger Woods or Roy McIlroy? Anybody play golf? Okay. The, uh, pretty good golfers. Wouldn't you say? Alright. The, you play golf? [Juror says, "I'm not good at it."] I'm not, yeah, I don't know what I play is golf. Okay. I got golf clubs and go to the golf court and, three, up there, they've got a three par, a par three up there at the American Legion.

But, who in here believes if I was to go out and play golf with Roy and Tiger, that it's possible, possible that I could beat them in nine holes. Does everyone agree it's possible. Anything's possible. Both their arms could fall off. Okay. It's possible. Maybe extreme, but it's possible. Anything could happen, okay.

Is it reasonable to believe that I would beat both of them? No. No, it's not reasonable. Um, it's not. If you play golf, you know its not reasonable. Does everybody understand the difference between possible and reasonable though? Okay. Now, does everybody agree to hold this man responsible for his actions if I meet my burden of proof beyond a reasonable doubt?

Gasaway's Brief at 11.

The Kentucky Supreme Court, in accordance with RCr 9.56, has

consistently held that "reasonable doubt" cannot be defined for the jury. *See, e.g.*,

*Commonwealth v. Callahan*, 675 S.W.2d 391, 392 (Ky. 1984); *Johnson v. Commonwealth*, 184 S.W.3d 544, 550 (Ky. 2005).  The prohibition against defining reasonable doubt extends to both the Commonwealth and defendant, and it applies to all stages of the trial, including *voir dire*. *Callahan*, 675 S.W.2d at 393.

Conversely, our Supreme Court has held it is permissible to define what reasonable doubt is not.  *See Rogers v. Commonwealth*, 315 S.W.3d 303, 308 (Ky. 2010) (finding permissible counsel's statement to the jury that "beyond a reasonable doubt" is not the same as the standard utilized in a civil trial which is "beyond a preponderance of the evidence"); *Johnson*, 184 S.W.3d at 548-49 (finding permissible counsel's statement that "beyond a reasonable doubt" is not the same as "beyond a shadow of a doubt").  However, in *Marsch v. Commonwealth*, 743 S.W.2d 830, 833-34 (Ky. 1987), the Court held that the Commonwealth's extended discussion with a potential juror during *voir dire* about reasonable doubt using a hypothetical to contrast "reasonable doubt" with "beyond a shadow of a doubt" did violate the rule against defining reasonable doubt.

In the case *sub judice*, the Commonwealth engaged in more than just merely stating what reasonable doubt is not.  Rather, the Commonwealth provided a lengthy hypothetical that juxtaposed what is reasonable versus what is possible. Consequently, we agree with Gasaway that the Commonwealth's statements

-11-

violated the prohibition against defining reasonable doubt. Nonetheless, we hold that the unpreserved error did not seriously affect the fairness, integrity, or public reputation of the judicial proceeding so as to be shockingly or jurisprudently intolerable. *See Williams*, 462 S.W.3d at 410. Accordingly, we conclude the unpreserved error did not rise to the level of manifest injustice as there was overwhelming evidence to support Gasaway's conviction upon possession of heroin. Therefore, any error did not rise to the level of palpable error under RCr 10.26.

Gasaway next contends the trial court erred during his retrial on the possession of heroin charge by allowing introduction of evidence of Gasaway's possession of marijuana and possession of methamphetamine. At the trial, the Commonwealth announced its intention to introduce evidence that methamphetamine and marijuana had been discovered in Gasaway's truck. In the first trial, Gasaway had been acquitted of the possession of methamphetamine charge but had been found guilty of the misdemeanor charge of possessing marijuana. Gasaway objected to the introduction of evidence of both the methamphetamine and the marijuana.

At trial, the Commonwealth acknowledged it would be improper to introduce the results of Gasaway's first trial but contended it could reference the discovery of methamphetamine and marijuana pursuant to Kentucky Rules of

-12-

Evidence (KRE) 404(b). In support thereof, the Commonwealth noted that in addition to the methamphetamine and the marijuana discovered in Gasaway's truck, there was also a urinalysis drug detection device, which would indicate he was trying to thwart detection of his drug use. And, the Commonwealth argued that the methamphetamine and marijuana provided context to Gasaway's statement to Detective Dover that "I'm not worried about the weed or ecstasy, and you damn sure didn't find no three grams of heroin. And in Louisville, that's just a citation." Commonwealth's Brief at 5. The trial court ultimately ruled that evidence of the methamphetamine and the marijuana discovered in Gasaway's truck was admissible under KRE 404(b). The trial court also gave an admonition to the jury.

Regarding the introduction of the methamphetamine, Gasaway had been acquitted upon the possession of methamphetamine charge during the first trial. And, it is well-settled that the Commonwealth is prohibited from introducing evidence of charges that were "dismissed or set aside." *Meyer v. Commonwealth*, 393 S.W.3d 46, 53 (Ky. App. 2013) (citation omitted). However, whether evidence of the conduct, as opposed to evidence of the criminal charge, can be introduced into evidence is another issue entirely.

The United States Supreme Court addressed this precise issue in *Dowling v. United States*, 493 U.S. 342 (1990). In *Dowling*, the Supreme Court held that an acquittal in a criminal case does not preclude the prosecution from

-13-

introducing evidence of the same conduct in a subsequent trial. The holding in *Dowling* has been cited by the Kentucky Supreme Court. *See Hampton v. Commonwealth*, 133 S.W.3d 438, 442 (Ky. 2004). And *Dowling* also held that a limiting instruction or an admonition to the jury is proper, if requested. *See Dowling*, 493 U.S. at 348-49.

In this case, the Commonwealth did not attempt to introduce evidence of the criminal charge of possession of methamphetamine; rather, the Commonwealth merely introduced evidence that methamphetamine was discovered in Gasaway's truck along with the marijuana and the urinalysis drug detection device. And, the trial court gave an admonition to the jury. Therefore, pursuant to the holdings in *Dowling*, 493 U.S. 342 and *Hampton*, 133 S.W.3d 438, we do not perceive any impediment to the admission of the evidence that methamphetamine was discovered in Gasaway's vehicle simply because he was acquitted of the charge. Again, the Commonwealth did not introduce evidence that Gasaway was charged with methamphetamine only that it was discovered in his truck. We find no error regarding its admissibility.

As concerns the marijuana, the trial court ruled that the evidence was discovered in Gasaway's vehicle and could be introduced under the exceptions provided for in KRE 404(b). Gasaway contends this was in contravention of the

evidentiary rule. Accordingly, we must examine whether evidence of the marijuana was properly admitted pursuant to KRE 404(b).

KRE 404(b) provides:

Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Under KRE 404(b), evidence of other crimes, wrongs, or acts is generally inadmissible to demonstrate "a defendant's propensity to commit crimes in order to show that he or she committed the charged crime." Robert G. Lawson, THE KENTUCKY EVIDENCE LAW HANDBOOK § 2.30(1)(a) (5th ed. 2013). However, evidence of other crimes, wrongs, or acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" KRE 404(b)(1). It is also admissible if the evidence is so inextricably intertwined with other essential evidence that separation of the two could not occur without serious adverse effect on the offering party. KRE 404 (b)(2). And, KRE 404(b)(2) is "intended to be flexible enough to permit the

prosecution to present a complete, un-fragmented . . . picture of the crime . . . including necessary context, background and perspective." *See Major v. Commonwealth*, 177 S.W.3d 700, 708 (Ky. 2005). Evidence that is deemed admissible under KRE 404(b) must also satisfy the probative versus prejudice analysis of KRE 403. *Helton v. Commonwealth*, 595 S.W.3d 128, 132 (Ky. 2020). The trial court's ruling upon the admissibility or exclusion of evidence is reviewed for abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

In this case, the Commonwealth asserts that both the methamphetamine and marijuana evidence from the first trial were admissible pursuant to 404(b)(1) to demonstrate Gasaway's intent and/or was admissible under KRE 404(b)(2), as inextricably intertwined with the possession of the heroin.[4] More particularly, as to KRE 404(b)(2), the Commonwealth asserts:

> Regardless, the evidence that Gasaway possessed marijuana and ecstasy [later determined to be methamphetamine] was admissible under KRE 404(b)(2) because it was necessary for the Commonwealth to present its entire case to the jury. "KRE 404(b)(2) is intended to be flexible enough to permit the prosecution to present a complete, un-fragmented, un-artificial picture of the crime committed by the defendant, including necessary context, background[,] and perspective." *Major v. Commonwealth*, 177 S.W.3d 700,

---

[4] We have previously concluded that the methamphetamine was properly introduced at trial, notwithstanding Gasaway's acquittal on that charge. This evidence would also be admissible under our Kentucky Rules of Evidence 404 analysis for the marijuana.

-16-

708 (Ky. 2005) (citation and internal quotation marks omitted); see also *Clark v. Commonwealth*, 267 S.W.3d 668, 681 (Ky. 2008) (events were admissible under KRE 404(b)(2) because they "were germane to the overall sequence of events surrounding the crimes and to the events which led to them being reported to authorities.").

The Whizzanator was circumstantial evidence that Gasaway possessed heroin. McClanahan testified that the employees of Knight's Mechanical are subject to random drug screens. Someone using controlled substances would likely need to circumvent that requirement, and Gasaway could have used the Whizzanator to do just that. It's also important that Gasaway kept the item in his vehicle, where he could presumably access it if his place of employment demanded a urine sample without giving him prior notice. And the circumstances surrounding the search of Gasaway's vehicle were also relevant: Because the Whizzanator was substantive evidence of Gasaway's guilt, his pugnacious response to the prospect that law enforcement would search his vehicle – where the item was found – was also probative of his guilt.

Commonwealth's Brief at 20-21 (citation to record omitted).

Upon review of the Commonwealth's argument as to admissibility under KRE 404(b)(2), we are inclined to agree that the trial court properly admitted evidence of the marijuana discovered in Gasaway's truck as it was inextricably intertwined with the other essential evidence and that separation of the two could not occur without serious adverse effect on the offering party. *See Kerr v. Commonwealth*, 400 S.W.3d 250, 261-62 (Ky. 2013). Likewise, we view the probative value of the evidence as outweighing any potential prejudicial effect

thereof. *See* KRE 403. Consequently, we cannot conclude that the trial court abused its discretion by admitting evidence of the marijuana or methamphetamine discovered in Gasaway's truck.

Gasaway's final argument is that the trial court erred by allowing certain witnesses to offer improper opinion testimony of the video footage that depicted the heroin falling out of Gasaway's pocket as he removed his cell phone. More particularly, Gasaway asserts that it was error to allow Knight, Tharpe, and Detective Dover to convey to the jury that they had watched the video footage and that it depicted heroin falling out of Gasaway's pocket.

It is well-established that KRE 602 and KRE 701 set forth the rules governing the admissibility of narrative testimony. *See Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014). In *Morgan*, the Kentucky Supreme Court explained:

> KRE 701 limits opinion testimony by a lay witness to that which is "[r]ationally based on the perception of the witness; [and] . . . [h]elpful to a clear understanding of the witness' testimony or the determination of a fact in issue." KRE 701(a)-(b). In addition, KRE 602 requires a witness to have personal knowledge before being allowed to testify about a subject.

*Morgan*, 388 S.W.3d at 392. And, the *Morgan* Court also noted that a lay witness should not interpret video evidence because doing so "invades the province of the jury" which is tasked with making those determinations of fact based upon the

-18-

evidence presented. *Id.* at 392 (citation omitted). It was, likewise, held in *Morgan* that it is permissible for witnesses to identify an individual on video where the identification is based upon the "witnesses' personal knowledge from prior exposure" to the person's physical appearance. *Id.* at 392.

In the case *sub judice*, Knight and Tharpe both worked with Gasaway, and they were familiar with his physical appearance. As such, it was proper for them to identify Gasaway in the video based upon their personal knowledge. As for Detective Dover, we believe the court erred in the admission of his testimony about the video. However, we find this error to be harmless because the jury was shown the video; consequently, the jury was "in a position to interpret the security footage independently from the testimony." *Boyd v. Commonwealth*, 439 S.W.3d 126, 132 (Ky. 2014). Upon the whole, we believe the trial court did not abuse its discretion by allowing Knight and Tharpe to testify about the video footage and any error regarding Detective Dover's testimony was harmless.

For the foregoing reasons, the August 30, 2019, judgments of the Hardin Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Brandon Neil Jewell
Steven J. Buck
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Erin Yang
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky